DOUCET, Judge.
This suit was consolidated for trial with the suit entitled Equipment, Inc. v. Wanda Enterprises, Ltd., our docket number 84-1018. These suits arise out of the same facts, however, we shall render separate judgments for each suit.[1]
American Well Service & Drilling, Inc. (American) brought suit on an open account against Wanda Enterprises, Ltd. (Wanda) for $32,948.75 for services rendered by American, who furnished a drilling rig and crew for re-entry operations on a well owned by Wanda.
Equipment, Inc. (Equipment) brought suit on an open account against Wanda for $30,485.46 for rental charges of certain equipment used by American in the re-entry operations.
From a judgment rendered in favor of American and Equipment in the amount of $37,500.00, Wanda appeals.
FACTS
Sidney Domas, the principal stockholder of Wanda, owned a lease which contained an abandoned well that had been previously drilled to a depth of approximately 14,-000 feet by Patrick Petroleum of Houston, Texas.
J. Gus Hawkins had acquired the lease and sold it to Wanda reserving a 4.5% overriding interest therein. The well, known as Prejean # 1, contained 13⅜" surface pipe down to approximately 3,000 feet. Below that depth, the well contained a protective string of pipe to its total depth of approximately 14,000 feet. Domas planned to re-enter the well and clean it out to a depth of approximately 9,250 feet. At that depth, the protective string would be perforated to test the well for production.
Domas, who had worked primarily in the geology field, was not well acquainted with drilling operations. He depended principally upon Gus Hawkins for guidance in the performance of the re-entry procedure. Hawkins had many years experience in drilling activities. In order to accomplish their objective, Hawkins and Domas met with Louis Carpenter, the principal stockholder and general manager of American and Equipment. American owned several rigs and Equipment was a rental company. Hawkins had known Carpenter for several years. The meeting was held for the purpose of discussing the estimated cost of the re-entry operations. After some discussion and an examination of Department of Conservation records concerning the condition of the well, Carpenter estimated that it would cost approximately $76,650.00 to complete the re-entry and equip the well for production.
Domas authorized American to begin operations. American started moving the rig on the location on February 22, 1983. American was on the job for a total of 21 days during which time it encountered some unexpected problems with a 10 foot metal plug at 300 feet and some gas pressure which would build up overnight while the rig was not in operation. After reaching a depth of 2,200 feet, American, through Carpenter, notified Domas and Hawkins that he was encountering gas pressure and was afraid of a blowout if he proceeded further. Carpenter told Domas and Hawkins that he was going to dismantle the rig and move off the location. No objection was made by Domas or Hawkins. After moving off the well,[2] American billed Wanda for $32,048.75 for the use of the rig for 21 days. Also, Equipment billed Wan *999 da for $30,485.46 as charges for various equipment rentals used in the operations.
The trial court held that the discussion of the cost of the well by Carpenter, Domas and Hawkins was nothing more than an estimate and was not a turn-key or guaranteed price for drilling the well. The court further disallowed three days rig time reducing the rig time from 21 days to 18. The court held that the parties agreed to a charge of $1,450.00 for a ten hour day for rig time. On this basis, an award of $26,-100.00 was due for rig time. Apparently, the remainder of the award by the trial court, $11,400.00, was for rental charges by Equipment.
On appeal, Wanda contends that the total award of $37,500.00 was excessive and that such an award by the trial court was manifest error.
Wanda contends that the estimate shows that it would take 17 days to re-enter the well to a depth of approximately 10,000 feet at a cost of $34,150.00. It is further argued that, since American only drilled to 2,200 feet, which was only 20% of the 10,000 foot objective, it should be allowed 20% of $34,150.00, or $6,830.00. This argument has no merit for several reasons.
An examination of the estimate clearly reveals that American was furnishing the rig at an hourly rate of $145.00, or $1,450.00 for a ten hour day. Gus Hawkins, in his testimony, stated that this was the usual practice in this type of operation. He agreed that American was to be paid at the rate of $145.00 per hour. Also, when the estimate was made, the Department of Conservation record furnished American by Hawkins, showed no 10 foot metal retainer located at 300 feet nor did it show cement at intervals from 300 feet to 2,200 feet, the point where American abandoned the work. The drilling of this retainer and cement was difficult and accounted for the fact that it took more time than expected to drill to 2,200 feet. For instance, it took 3V2 days to drill out the 10 foot retainer.
Hawkins testified that normally it would take one day to install the rig at the location. In this case, the record reflects that it took four days. The trial court felt that four days for rigging up was excessive, thus, he disallowed the extra three days. We find no manifest error in the award of 18 days of rig time at $1,450.00 per day ($26,100.00).
As to the claim by Equipment, the trial court correctly held that “there was no meeting of the minds between the parties” with reference to the rental equipment. Hawkins testified that the items listed as rental equipment should have been furnished by American and was to be included in the $145.00 per hour for the rig. Carpenter stated that it was necessary to rent additional equipment in order to perform drilling operations with the rig which was used primarily for workover purposes. Carpenter testified that this was discussed with Hawkins. Also, rental charges are mentioned in the estimate.
The trial court apparently concluded that the parties understood that rental equipment would have to be used, but it was felt that Equipment’s charges were excessive. Equipment’s invoices total $30,485.46. These invoices reflect rental charges for equipment such as drill pipe, mud and water tanks, pumps, power swivels, adapters • and various other tools which amounted to approximately $25,000.00. Transportation charges were about $5,000.00. The trial court does not state how it arrived at a figure of $11,400.00. Apparently the court based its award upon quantum meruit.
In the case of Jones v. City of Lake Charles, 295 So.2d 914 (La.App. 3rd Cir. 1974), this court, in its discussion of quantum meruit, stated as follows:
“The general rule is that the plaintiff who establishes his right to be compensated on quantum meruit should recover as much as he reasonably deserves for his services and for the time and labor required for them. There is no specific test which must be applied to determine the reasonable value of such services. It *1000 is a matter of equity depending upon the circumstances of each case....”
The trial court apparently felt that $11,400.00 was a reasonable value for such services. It appears that this figure is less than the reasonable value of Equipment’s services. This award, however, cannot be increased since neither of the plaintiffs have appealed or answered the appeal. Thus, the award to Equipment shall be $11,400.00.
For these reasons the judgment rendered by the trial court in this case is set aside and it is ordered, adjudged and decreed that judgment be rendered herein in favor of American Well Service & Drilling, Inc. and against Wanda Enterprises, Ltd. for the sum of $26,100.00 with legal interest thereon from the date of demand until paid. Wanda shall pay all costs of these proceedings including costs for the trial court and for this appeal.
JUDGMENT SET ASIDE, RECAST AND RENDERED.

. The trial court rendered one judgment for $37,500.00 in favor of both plaintiffs. Even though both plaintiff corporations are owned by the same person, the plaintiffs are separate entities and we feel that separate judgments should be rendered in each suit.

. Several months later. Domas and Hawkins secured another contractor and completed the well as planned.